IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| SHON K. KAPU, | ) | CV. NO.  09-00602 DAE BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SEARS, ROEBUCK AND CO., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER: 1) GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT
AS TO COUNTS II AND III; 2) DENYING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT WITHOUT PREJUDICE AS TO COUNT I
<u>AND AS MOOT AS TO COUNT III</u>

On July 18, 2010, the Court heard Defendant's Motion to Dismiss and

Motion for Summary Judgment.  Charles H. Brower, Esq., appeared at the hearing

on behalf of Plaintiff; Jeffrey S. Harris, Esq., appeared at the hearing on behalf of

Defendant.  After reviewing the motion and the supporting and opposing

memoranda, the Court **GRANTS** Defendant's Motion to Dismiss Complaint (Doc.

# 19) and **DENIES WITHOUT PREJUDICE IN PART AND DENIES AS**

**MOOT IN PART** Defendant's Motion for Summary Judgment (Doc. # 20).

## BACKGROUND

On June 10, 2009, Plaintiff Shon K. Kapu ("Plaintiff") filed a complaint in the State of Hawaii's Circuit Court of the First Circuit.  (Doc. # 1, Ex. A.)  On December 17, 2009, Defendant Sears, Roebuck and Co. ("Defendant" or "Sears") removed Plaintiff's state court action to this Court.  (See Doc. # 1.)  On December 30, 2009, Defendant filed the a Motion to Dismiss Complaint.  ("Mot.," Doc. # 6.)  On March 9, 2010, this Court filed an Order ("Mar. 9th Order," Doc. # 14) that granted Defendant's Motion to Dismiss Complaint without prejudice and ordered Plaintiff to file an amended complaint on or before April 22, 2010, that complied with the dictates of the Order and cured all factual deficiencies.  (See Mar. 9th Order.)

On April 22, 2010, Plaintiff filed a First Amended Complaint ("Complaint").  ("Compl.," Doc. # 16.)  Plaintiff's Complaint alleges Counts: (Count I) violation of state and federal discrimination laws, specifically Hawai`i Revised Statute ("HRS") § 378-2(1)(A) and (3) and Title VII of the Civil Rights Act of 1964, as amended (id. ¶¶ 10-12); (Count II) creation of a hostile work environment (id. ¶¶ 13-14); and (Count III) retaliation for opposing the discrimination identified in Count I (id. ¶¶ 15-17).

On May 6, 2010, Defendant filed a Motion to Dismiss Counts II and III of the First Amended Complaint ("Motion to Dismiss").  ("Mot.," Doc. # 19.) On the same day, Defendant filed a Motion for Summary Judgment on Counts I and III of the First Amended Complaint ("Motion for Summary Judgment") ("MSJ," Doc. # 20) and a Concise Statement of Facts in support ("DCSF," Doc. # 21.)  On May 11, 2010, Defendant filed an Errata to the Motion to Dismiss, which substituted page ten of the motion.  (Doc. # 22.)  On June 28, 2010, Plaintiff filed an Opposition to Defendant's Motion to Dismiss.  ("Opp'n to Mot.," Doc. # 26.) On the same day, Plaintiff also filed an Opposition to Defendant's Motion for Summary Judgment ("Opp'n to MSJ," Doc. # 27) and a Concise Statement of Facts in support ("PCSF," Doc. # 28.)  On July 2, 2010, Defendant filed a Reply in support of its Motion to Dismiss.  ("Reply to Mot.," Doc. # 29.)  The same day, Defendant filed a Reply in support of its Motion for Summary Judgment.  ("Reply to MSJ," Doc. # 30.)  On July 7, 2010, Defendant filed a Supplement to its Motion to Dismiss, which provided the Court with an unpublished Ninth Circuit case <u>Silars v. Nevada</u>, Nos. 08-17502, 2010 U.S. App. Lexis 12822 (9th Cir. June 22, 2010). ("Supplement," Doc. # 31.)

Plaintiff is "of Hawaiian ancestry and Pacific Islander."  (Compl. ¶¶ 4, 9(c).)  Plaintiff was hired by Defendant Sears as a Customer Solution Expert on

approximately May 25, 2005.  (<u>Id.</u> ¶¶ 3, 9(a) (stating a date of May 26, 2005.)  On

November 28, 2007, Plaintiff alleges that he was terminated from his position due

to discrimination and retaliation and made a complaint against his immediate

supervisor, who was of Japanese ancestry, for being verbally abusive and for

stating to third parties that he wished to fire Plaintiff.  (<u>Id.</u> ¶¶ 5, 9.)  Plaintiff

allegedly complained that the supervisor's actions were based upon discrimination,

but it is not clear if this allegation was made in the complaint or just stated

separately to the storage manager, who was also of Japanese ancestry.  (<u>Id.</u> ¶ 9(d).)

Plaintiff also states that a former manager had provided a written statement

supporting Plaintiff's allegation of discrimination, however, it is not clear when

this statement was provided.  (<u>Id.</u>)  In addition to Plaintiff's claims of

discrimination and retaliation, Plaintiff alleges that Sears' termination of Plaintiff

was in violation of its policy to provide a verbal and/or written warning prior to

termination.  (<u>Id.</u> ¶¶ 9(n).)

   Plaintiff states that the official reason for his termination by Sears was

that he was accused of theft because of an alleged violation of Sears' policy

regarding point of sale delivery rebates for certain items.  (<u>Id.</u> ¶ 9 (g-n).)  In

support of his claim, Plaintiff states that other employees who were non-Hawaiian,

including those of Japanese ancestry, would also allow point of sale delivery

rebates as Plaintiff had done, but the employees were "not investigated, reprimanded, nor terminated."  (<u>Id.</u> ¶ 9(i).)

Plaintiff alleges that he filed a Charge of Discrimination with the Hawaii Civil Rights Commission ("HCRC") based on discrimination due to race (Pacific Islander), national origin (Hawaiian), and retaliation after complaining of discrimination, which was assigned FEP No. 14493.  (<u>Id.</u> ¶¶ 6, 8.)  Plaintiff contends that he received a Notice of Dismissal and Right-to-Sue letter from the HCRC on April 21, 2009 and that he filed a charge with the Equal Employment Opportunity Commission ("EEOC"), which was assigned EEOC No. 486-2008-00163.[1] (<u>Id.</u> ¶ 7.)  Plaintiff alleges that on March 12, 2009, he received a Dismissal and Notice of Rights letter from the EEOC.  (<u>Id.</u>)

STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Review is limited to the contents of the complaint.  <u>See</u> <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754 (9th Cir. 1994).  A complaint may be dismissed as a matter of law for one of two reasons:

---

[1] The Court notes that neither of the alleged charges filed by Plaintiff with the EEOC or HCRC are attached as exhibits to Plaintiff's Complaint.

5

"(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim."  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556-57; see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted).  Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth."  Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("the non-conclusory 'factual content,' and reasonable inferences from that content,

must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief.  See Twombly, 550 U.S. at 570.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief.  Id. at 586. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Id. at 558 (citation omitted).  If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of

7

factually unsupported claims and defenses. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. <u>See</u> <u>id.</u> at 323. A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. <u>Porter</u>, 419 F.3d at 891 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. <u>S. Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885,

8

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.  Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).  "Conclusory allegations unsupported by factual data cannot defeat summary judgment."  Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving

party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted).  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

<u>DISCUSSION</u>

The Court will address Defendant's Motions by Count, rather than by Motion, for the purposes of clarity.

I.    Count I

Count I of the Complaint alleges:

The actions of Defendant's agents and employees were in violation of Hawaii Revised Statutes § 378-2(1)(A) and (3) in that Plaintiff was terminated, and suffered discrimination in terms, conditions, and privileges of his employment due to his race, national origin , and retaliation, and also in violation of Federal law under Title VII of the Civil Rights Act of 1964, as amended.

(Compl. ¶ 12.)  Title VII of the Civil Rights Act of 1964 forbids employment discrimination against any individual based on that individual's "race, color,

religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff alleging

disparate treatment under Title VII must first establish a prima facie case of

discrimination by offering evidence that "give[s] rise to an inference of unlawful

discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253

(1981). HRS § 378-2 states, in pertinent part:

> It shall be an unlawful discriminatory practice:
>
> (1) Because of race, sex, sexual orientation, age, religion, color, ancestry, disability, marital status, or arrest and court record: (A) For any employer to refuse to hire or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment;
> . . .
>
> (3) For any person whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or to attempt to do so[.]

HRS § 378-2(1)(A) & (3). A plaintiff may establish a prima facie case either by

meeting the four-part test laid out in McDonnell Douglas Corp. v. Green, 411 U.S.

792, 802 (1973), or by providing direct evidence suggesting that the employment

decision was based on an impermissible criterion. Cordova v. State Farm Ins.

Cos., 124 F.3d 1145, 1148 (9th Cir. 1997) (citations omitted); see Furukawa v.

Honolulu Zoological Soc., 936 P.2d 643, 648-50 (Haw. 1997) (applying the

McDonnell Douglas analysis to a HRS § 378-2 race discrimination claim).

11

A prima facie case under McDonnell Douglas requires a plaintiff to offer proof that: (1) he belongs to a protected class; (2) he performed his job adequately or satisfactorily; (3) he suffered an adverse employment action; and (4) other similarly situated employees who do not belong to the same protected class were treated differently. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing McDonnell Douglas, 411 U.S. at 802). "Similarly situated" employees are those who have similar jobs and display similar conduct. Vasquez v. County of L.A., 349 F.3d 634, 641(9th Cir. 2004); see also Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006). "Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees." Vasquez, 349 F.3d at 641.

Defendant argues in its Motion for Summary Judgment that Plaintiff did not perform his job satisfactorily and that no similarly situated individual outside of the Plaintiff's protected class was treated more favorably. (MSJ at 1, 4.) Plaintiff's Opposition, supported by his declaration, argues that Plaintiff performed his job satisfactorily and that similarly situated individuals outside of the Plaintiff's protected class were treated more favorably. Plaintiff requests pursuant to Rule 56(f) that this Court allow the parties to conduct discovery prior to ruling on a motion for summary judgment. (Opp'n to MSJ at 2.) In support, Plaintiff states

that a scheduling conference is set for August 5, 2010, that the parties have not yet

conferred pursuant to Rule 26(f), and that discovery has not yet commenced

pursuant to Rule 26(a).  (Id.)  The Court **GRANTS** Plaintiff's request pursuant to

Rule 56(f) for the reasons below.

In support of its argument that Plaintiff did not perform his job

satisfactorily, Defendant maintains that Plaintiff was terminated because he

improperly discounted the price of delivery for a customer and provided

unauthorized delivery rebates in violation of company policy and that he had

previously been issued a final warning for an Ethics/Policy violation.  (DCSF, ¶¶

3-4, 6-8; id., Declaration of Bradley Miller ("Miller Decl."), Exs. A, B, C, D & E.)

The Ethics/Policy violation was a first and final warning for accepting a check that

was written for $700 under the purchase price.[2]  (Miller Decl., Ex. A.)

Bradley Miller ("Miller"), the assistant store manager, directed that an

investigation be made into the discounted price of delivery occurrence.  (Id. ¶ 3,

Ex. B.)  Defendant asserts that the investigation revealed that no other sales

associate had improperly discounted the price of delivery or provided unauthorized

delivery rebates but showed that Plaintiff had done so in seven instances dating

---

[2] Plaintiff does not refute the fact that he had previously been issued a final warning for an Ethics/Policy violation prior to his termination. (Miller Decl. ¶ 2, Ex. A.)

back to October 2007.  (Id. ¶¶ 3-4, Ex. B.)  Defendant cites Delos Santos v. Potter, 2010 U.S. App. LEXIS 5555 (9th Cir. 2010) in support.  In Delos Santos, the court found that a plaintiff who had been observed rifling through mail on several occasions was not similarly situated to two other employees who had only been observed rifling through the mail on one occasion.  Id. at *3.

Plaintiff disputes that he knew that giving the point of sale discounts for delivery that led to his termination were wrong or that such a practice was unacceptable pursuant to Sears Policy and states that he had received approval for such a procedure from a manager.  Plaintiff additionally argues that someone besides Miller must have approved Plaintiff's termination and that person is not listed in regard to Plaintiff's termination, that Defendant did not attach all the documents regarding Plaintiff's termination to the Motion for Summary Judgment, and that Plaintiff's own declaration shows that he was a store performance leader and the top sales person in his department.  (Opp'n at 4-5; PCSF, Declaration of Shon Kapu "Kapu Decl.," ¶¶ 8, 13-21.)

Plaintiff alleges in his Complaint, Opposition and Declaration that other non-Hawaiian employees in the department allowed point of sale delivery rebates.  (Id. at 5.)  Plaintiff's declaration provides the names of such individuals as Brian Shon, Patrick Dart, and Jeff Kayo.  (Kapu Decl. ¶ 17.)  However, no

14

declarations from these individuals or other evidence is submitted to support Plaintiff's allegations.

Defendant argues that such denials and assertions by Plaintiff are insufficient to create a genuine issue of material fact because Plaintiff fails to set forth "specific factual data showing that he performed his job adequately or satisfactorily that would create a genuine issue for trial.  (Reply to MSJ at 3.)

The Court disagrees and finds that as to the "factual data" that would be available to support Plaintiff's job performance was satisfactory, such data is likely available to Plaintiff only through discovery from Sears, which has not yet commenced.  Further, Plaintiff may be able to create a genuine issue of material fact from conducting the deposition of Miller to which he has had no prior access and who is a material witness on which Defendant relies.  In opposing any subsequent motion for summary judgment by Defendants, Plaintiff must provide the Court with declarations or depositions or other evidence from "similarly situated" individuals who were non-Hawaiian employees and who were not terminated for providing point of sale rebates in the same manner as Plaintiff.[3] Plaintiff must also show that these similarly situated individuals had received a

---

[3] The Court notes that Plaintiff could, and should, have obtained declarations from the individuals alleged to be similarly situated in order to attempt to create a genuine issue of material fact at this stage.

15

final ethics violation warning, as had Plaintiff, prior to such acts.  <u>Wall v. Nat'l R.R. Passenger Corp.</u>, 718 F.2d 906, 909 (9th Cir. 1983) (noting that district court did not err in concluding that plaintiff did not show that he was treated less favorably than similarly situated employees because other employees had no disciplinary record and were thus not similarly situated).

Accordingly, the Court **DENIES WITHOUT PREJUDICE** Defendant's Motion for Summary Judgment as to Count I.  The Court **GRANTS** Plaintiff's request pursuant to Rule 56(f).

II.   <u>Count II</u>

Count II of the Compliant alleges that Defendant's actions "created a hostile work environment based upon discrimination . . . ."  (Compl. ¶ 14.)  In support, Plaintiff incorporates all prior factual allegations.  (<u>Id.</u> ¶ 13.)

In order to state a claim for hostile work environment under either Title VII or state law, a plaintiff must allege facts to show: "(1) that he was subjected to verbal or physical conduct of a [discriminatory] nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment."  <u>Vasquez</u>, 349 F.3d at 642 ("a plaintiff must show . . . that he was subjected to verbal or physical conduct of a racial  . . . nature");

16

Arquero v. Hilton Hawaiian Village, LLC, 91 P.3d 505, 510 (Haw. 2004)

(providing the additional factors of: (4) "the claimant actually perceived the

conduct as having such purpose or effect;" and (5) "the claimant's perception was

objectively reasonable to a person of the claimant's [race or native origin] in the

same position as the claimant.") (citation omitted).   "Hostile work environment

claims based on racial harassment are reviewed under the same standard as those

based on sexual harassment."   Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.

101, 116 n.10 (2002).

Defendant argues that Plaintiff's assertions state legal conclusions

even though they are cast in the form of factual allegations.  (Mot. at 1, 3-5 (citing

Compl. ¶¶ 9(d-e).)  Accordingly, Defendant argues that Plaintiff has failed to

allege that he was subjected to verbal or physical conduct of a discriminatory

nature based on a protected status; that the conduct was unwelcome; or that the

conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's

employment and create an abusive work environment.  (Id. at 5.)  In Opposition,

Plaintiff states that, as alleged in his Complaint, Plaintiff's supervisor created a

hostile work environment by allegedly engaging in the verbal abuse of Plaintiff,

stating that he wanted to fire Plaintiff, and after Plaintiff complained, the

supervisor scheduled Plaintiff for slow sale times so that his sales would be down,

deprived Plaintiff of an opportunity to obtain a mentorship bonus, interfered with

Plaintiff's interaction with customers, and would regularly page Plaintiff while on

his lunch break.  (Opp'n to Mot. at 2; Compl. ¶ 9(d-e).)

       From the face of the Complaint, Plaintiff provides factual allegations

and a basis for reasonable inferences that he was subjected to verbal conduct of a

discriminatory nature because he alleges that his supervisor's actions were based

upon Plaintiff's national origin or race.  Specifically, Plaintiff alleges that "the

actions of the supervisor were based upon discrimination against Plaintiff[,]"

others told him the supervisor's actions were based upon discrimination, and the

supervisor did not act in the same manner toward non-Hawaiian employees.

(Compl. ¶¶ 9-10.)  "Generally, a plaintiff alleging racial or national origin

harassment would present facts showing that he was subjected to racial epithets in

the workplace."  See Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir. 2002).

However, Plaintiff may also allege that the facts show that the verbal abuse

occurred because of the supervisor's view of his race or national origin.  See id.

       However, even if the Court were to find that Plaintiff adequately

alleged that he was subjected to verbal conduct of a discriminatory nature,

Plaintiff must also adequately allege that his supervisor's conduct was sufficiently

18

severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive work environment.

To determine whether conduct was sufficiently severe or pervasive to violate Title VII, a court looks at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Vasquez, 349 F.3d at 642.  In addition, "[t]he working environment must both subjectively and objectively be perceived as abusive."  Id.  In Vasquez, the Ninth Circuit compared the defendant's conduct to other hostile work environment cases and determined that the events in Vasquez were not severe or pervasive enough to violate Title VII.  Id. at 643 (citing Sanchez v. City of Santa Ana, 936 F.2d 1027 (9th Cir. 1990) (no reasonable jury could have found a hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino); Draper v. Coeur Rochester, Inc.,147 F.3d 1104 (9th Cir. 1998) (defendant created a hostile work environment where the plaintiff's supervisor made repeated sexual remarks about the plaintiff over a two-year

period, calling her "gorgeous" and "beautiful" rather than her name, telling her about his sexual fantasies and his desire to have sex with her, commenting on her "ass," and asking over a loudspeaker if she needed help changing clothes); <u>Nichols v. Azteca Restaurant Enterprises, Inc.</u>, 256 F.3d 864 (9th Cir. 2001) (a male employee of the restaurant was subjected to a relentless campaign of insults, name-calling, vulgarities, and taunts of "faggot" and "fucking female whore" by male co-workers and supervisors at least once a week and often several times a day); <u>Kortan v. California Youth Authority</u>, 217 F.3d 1104 (9th Cir. 2000) (no hostile work environment when a supervisor called female employees "castrating bitches," "Madonnas," or "Regina" on several occasions in plaintiff's presence; the supervisor called the plaintiff "Medea"; the plaintiff complained about other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor)).

In <u>Vasquez</u>, the plaintiff alleged that another employee of a slightly higher rank told plaintiff that he had "a typical Hispanic macho attitude" and that he should consider transferring to the field because "Hispanics do good in the field" in statements more than six months apart, yelled at him twice in front of the youth plaintiff was supervising, made negative comments to the youth behind his

back, and submitted two memos about plaintiff allegedly containing false complaints over the course of a year.

Here, Plaintiff's allegations regarding his supervisor's conduct is limited to vague allegations that his supervisor engaged in the "verbal abuse" of Plaintiff, the supervisor stated that he wanted to fire Plaintiff, and that after Plaintiff complained, the supervisor scheduled Plaintiff for slow sale times so that his sales would be down, deprived Plaintiff of an opportunity to obtain a mentorship bonus, interfered with Plaintiff's interaction with customers, and would regularly page Plaintiff while on Plaintiff was on his lunch break.  (Compl. ¶ 9(d-e).)  When considered in light of these previous cases, the conduct complained about by Plaintiff is less severe than that in Vasquez and did not create a sufficiently abusive work environment.  The allegedly abusive incidents, which are not specified in time frame or frequency, contained no racially related epithets and was not comparable to the severity or humiliating nature of even Kortan, let alone the conduct at issue in Draper or Azteca where a hostile environment was found. Therefore, Plaintiff's allegations regarding his supervisor's conduct, even if taken as true, are not severe or pervasive enough to create a hostile work environment under the statute.

21

Plaintiff has already had an opportunity to amend his Complaint and failed to produce factual allegations supporting his claim of hostile work environment.  Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss Count  II.

III.    Count III

Count III of the Complaint alleges that "Defendant's agents and employees . . . terminat[ed] Plaintiff or otherwise discriminating against him because he opposed the discrimination alleged herein in violation of H.R.S. § 378-2(2) and Title VII . . . ."  (Compl. ¶ 16.)  Hawai`i courts look to federal law for guidance in analyzing retaliation claims under HRS § 378-2(2).  See Schefke v. Reliable Collection Agency, Ltd., 32 P.3d 52, 62 (Haw. 2001) (looking to Title VII case law regarding claims of retaliation).  Title VII makes it illegal for any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  The anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a), provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this

subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation proceeding, or hearing under this subchapter.

Title VII, 42 U.S.C. §2000e-3(a); see also Schefke, 32 P.3d at 70 ("a retaliation claim under HRS § 378-2(2) is subject to the following three-part test: . . . the plaintiff must first establish a prima facie case of such retaliation by demonstrating that (a) the plaintiff (i) has opposed any practice forbidden by [HRS chapter 378, Employment Practices, Part I, Discriminatory Practices] or (ii) has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part, (b) his or her employer, labor organization, or employment agency [has] ... discharge [d], expel[led], or otherwise discriminate[d] against the plaintiff and (c) a causal link [has] exist[ed] between the protected activity and the adverse action[.]") (internal citations and quotations omitted).

Title VII retaliation is actionable only if the retaliated against conduct is protected under the statute.  42 U.S.C. § 2000e-3(a); see Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir. 1988) (noting that appellant did not allege that he had opposed any form of discrimination protected under Title VII); see also Silver v. KCA, Inc., 586 F.2d 138, 142 (9th Cir. 1978) ("[U]nder the clear language of the 'opposition' clause . . ., a case of retaliation has not been made out unless the 'retaliation' relates to the employee's opposition to a [Title VII]

23

violation."); <u>Stucky v. Department of Education, State of Hawai'i</u>, 283 Fed. Appx. 503, 505 (9th Cir. 2008) (citation omitted).

   In its Motion to Dismiss, Defendant argues that the Complaint provides "no factual content or basis for reasonable inferences from that content suggesting that Plaintiff engaged in any opposition that was protected by the anti-discrimination statutes.  (Mot. at 10.)  In support, Defendant points to the fact that Plaintiff's complaint involved allegations of a supervisor's verbal abuse and statement that he wanted to fire Plaintiff, but did not oppose discriminatory practices as required by the statute for retaliation.   (<u>Id.</u> (citing <u>Gao v. State of Hawaii Dep't of Attorney Gen.</u>, 2010 U.S. Dist. LEXIS 2073, **17-25 (D. Haw. 2010); <u>Clark v. Goodwill Industries of Hawaii, Inc.</u>, 2010 U.S. Dist. LEXIS 1754, **19-24 (D. Haw. 2010).   Defendant also notes that there is no allegation to whom Plaintiff made the complaint "based upon discrimination."  (<u>Id.</u> 10-11.)  Moreover, Defendant argues that there is no factual content or basis for reasonable inferences from that content that the person who allegedly terminated Plaintiff had any knowledge of Plaintiff's allegedly protected act.  (<u>Id.</u> at 11 (citing <u>Gonzalez v. National Railroad Passenger Corp.</u>, 2010 U.S. App. LEXIS 8039, *5 (D. Haw. 2010) ("Gonzalez points to no evidence that foreman Lane knew about her

protected activity.  As a result, her allegation that Lane engaged in retaliatory discipline fails for lack of causation.”); <u>Raad v. Fairbanks N. Star Borough Sch. Dist.</u>, 323 F.3d 1185, 1197 (9th Cir. 2003).)  Plaintiff's Opposition is limited to two sentences wherein he restates the Complaint's allegations. (Opp'n to Mot. at 2.)

In his Complaint, Plaintiff states that he "made a complaint" against his immediate supervisor, who was of Japanese ancestry, for being verbally abusive and for stating to third parties that he wished to fire Plaintiff.[4]  (<u>Id.</u> ¶ 9(d).)  Plaintiff allegedly complained separately to a different storage manager that the supervisor's actions were based upon  discrimination.  (<u>Id.</u>)  As noted by Defendant, it is unknown to whom the complaints were made, and further, Plaintiff fails to provide any factual content that supports an inference that his termination was in any way connected to the complaint or the allegation made to the storage manager.

This Count appears to be based upon Plaintiff's filing of a complaint against his supervisor for verbal abuse and for stating that he wanted to fire

---

[4] The Court notes that in Plaintiff's original complaint (Doc. # 1), Plaintiff termed the "complaint" referenced here as an "ethics report" against the supervisor, again without mention of any allegation by Plaintiff of discrimination.

Plaintiff, which has no apparent connection with any activity protected under Title VII or HRS § 378-2(2) and no casual connection to Plaintiff's termination. Plaintiff, who the Court notes is not proceeding pro se but has counsel, was already provided an opportunity to amend his claim of retaliation.  (See Mar. 9th Order at 11-13.)  In its March 9, 2010 Order allowing Plaintiff to amend his claim, this Court made clear that in order to state a claim for retaliation, a causal link must have existed between the protected activity and the adverse action.  (Id. (citing Schefke, 32 P.3d at 70; Silver, 586 F.2d at 142 ("[U]nder the clear language of the 'opposition' clause . . ., a case of retaliation has not been made out unless the 'retaliation' relates to the employee's opposition to a [Title VII] violation.")).  Plaintiff's current Complaint does not provide any allegations, let alone factual content or reasonable inferences from that content, that is plausibly suggestive of a claim entitling the plaintiff to relief.  Moss, 572 F.3d at 969.  Plaintiff's claim provides no more than speculation; the fact that retaliation was possible under the circumstances, without more, does not sufficiently state a "plausible" ground for relief.

Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss

Count III.[5]

CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's

Motion to Dismiss Complaint as to Counts II and III (Doc. # 19) and **DENIES**

**WITHOUT PREJUDICE IN PART AND DENIES AS MOOT IN PART**

Defendant's Motion for Summary Judgment (Doc. # 20).  Defendant's Motion for

Summary Judgment is DENIED WITHOUT PREJUDICE as to Count I and

---

[5] Because the Court grants Defendant's Motion to Dismiss as to Count III, the Court does not rule on Defendant's Motion for Summary Judgment as to this Count.  However, the Court notes that even if Plaintiff had managed to state a claim for retaliation, such a claim would fail on summary judgment.  Looking to Defendant's Motion for Summary Judgment, Defendant alleges that Miller, who terminated Plaintiff for providing unauthorized delivery discounts and rebates to customers in violation of company policy, did not know about any complaints of discrimination by Plaintiff at the time of Plaintiff's termination.  (MSJ at 7; DCSF ¶¶ 7, 9.)  Defendant's allegation is supported by Miller's declaration.  (Miller Decl. ¶ 8.)  In fact, Miller states that Plaintiff had failed to complain of any form of discrimination prior to his termination.  (Id.)  Plaintiff does not allege Miller knew of any complaint of discrimination that he made prior to his termination and states only that the District Manager or Regional Human Resources Manager "must participate in the termination approval process."  (Opp'n to MSJ at 7.)

DENIED AS MOOT as to Count III.  The Court GRANTS Plaintiff's Rule 56(f)

request as to Count I.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 27, 2010.



_____
David Alan Ezra
United States District Judge

Kapu v. Sears, Roebuck & Co., Cv. No. 09-00602 DAE BMK; ORDER: 1)
GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT AS TO
COUNTS II AND III; 2) DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT WITHOUT PREJUDICE AS TO COUNT I AND AS MOOT AS TO
COUNT III